Good morning ladies and gentlemen. We're ready for the first case United States against Ajayi. Your honors and may it please the court. I'm Jonathan Studer practicing on a 7-11 license through the Bloom Legal Clinic at Northwestern Law. I represent Mr. Abidemi Ajayi who appeals his convictions for bank fraud and money laundering. I'm going to talk with you today about three issues. First, legal insufficiency. Second, the insufficiency of the evidence. And third, the erroneous exclusion of emails relating to the MRI business he was trying to get going. Starting first with legal insufficiency, this discussion starts with this court's opinion, Anderson from 1999. The bank fraud statute punishes only executions of a scheme. So I wonder if you could focus on the facts of this case because here's what worries me about this case. As far as I can tell from the record, this GR icon account really was Mr. Ajayi. It was his and it doesn't seem to me too much of a stretch to say that this check which gets changed from the Pollock paper payee to GR icon, his business, but that's circumstantial evidence that he himself was responsible for the change. Nobody else was involved with the business. That question seems to be directed towards the insufficiency of the evidence and... Well, they're related, I think, the legal insufficiency. If he has, in fact, been involved in a scheme that he executes, then that's what the law requires. Well, first, the government didn't charge his deposit of the check, which in our view is the only possible execution of this scheme. Anderson is clear that a bank fraud scheme ends once the transfers to another account, withdrawals into cash, or mere spending on groceries, as the court said in Anderson, those aren't executions of the scheme. And if the court looks carefully at the indictment beginning on page 13 of the appendix, you'll see that each and every one of these bank fraud charges, counts, were based only on the withdrawal. Excuse me, let me just point out, paragraph 3 says it was part of the scheme that Ajayi obtained a check numbered such and such, and that it was altered to change the payee, and that it was deposited. So I'm not sure that I see only the withdrawals in the indictment itself. Thank you. Even if we agreed with you, what would occur here would be that four counts could be dismissed, and then the case would be remanded for a new sentencing on the remaining count. And of course, the court could still give him the same amount of time if it chooses. All that would happen, it seems to me, would be that the special assessment would be reduced by the $400 for each of the four counts. But I would like to ask you something, and it is this. Your Honor, may I? Oh, yes, of course. I disagree with what you just said. I think it would have to be multiple. I think the counts would have to be multiplicitous of something. For example, when we're talking about multiplicity in the Hoard case, the withdrawals were found multiplicitous of the deposits were charged in the specific counts. And if the withdrawals could be executions of a bank fraud scheme, I think you would undermine Congress's intent, because the bank fraud scheme, unlike the money laundering statute, doesn't have a statutory minimum. And there's no requirement that the transaction be in the form of a check. So all the debit card purchases could be executions of a scheme. Did the government charge him, refresh me, did the government charge him with the full $344,000 or just the $170,000 that he managed to withdraw? They charged him with the full amount of the check and they punished him based on the full amount of the check, because that's risk of loss. And that's what the bank fraud statute intends to punish, not actual loss. And that's why the withdrawals aren't the criminal conduct for bank fraud. It's the deposit, and that wasn't charged. But aren't the cases where the court has found that bank fraud charges in the indictment were multiplicitous are only cases where the government charges the defendant for depositing the check in one account, and in another account, charges for the separate withdrawals of funds. So that's a little different than our situation. That is a little bit different, but it's, I think, a distinction without a difference. Because if that could get around it, then it would be, that opinion, Hoard would be saying that the government can charge whichever occurs most often. And that doesn't seem quite right, because you would still have a situation where it's here, if they deposit a single altered check and then make 100 debit card purchases, some is for things as small as a pack of gum for $1. Under the government's approach to this case, those purchases of gum could be executions of a bank fraud scheme. You could see hundreds and hundreds of convictions for the deposit of a single altered check. Now, I'm going to ask you my question. Why would you need an expert to testify that the check was not obviously altered? Why could not a jury simply look at the check and decide, as laypersons, whether the alteration would be obvious to a layperson? Well, first, there's evidence in the record showing that Chase Bank, who has more experience with these checks than a layperson, didn't detect that this forgery was obvious. And whether the forgery is obvious is very important, because that's really the heart of the government's case. I know, but Chase Bank is not the jury. And maybe you're just saying it's a jury question. So we would have some evidence on the side that it wasn't obvious, Chase didn't catch it, other evidence on the side that it is. Why aren't we describing a jury question? Your Honor is correct. This would be a jury question. It'd be important for him to be able to present the full evidence on his side of the case. And it wasn't clear to him from the indictment that they were going to be charging him with the scheme of just perhaps innocently receiving a check and knowing from looking at it that it was altered. But I have to say his explanation, this Charlie Brown explanation that he has, was so preposterous that it seems to me the jury could as well have taken that into account, saying we've been given two stories and we just don't buy his. The jury was certainly welcome to ignore his entire story and to find him completely incredible. But their finding him incredible does not establish the government's burden on the elements of this crime. They didn't present any evidence that Mr. Ajawi took or altered the check. They didn't show any connection between him and the... No direct evidence, but circumstantial evidence. Particularly when you look at what his account had, what he had in his account before, that the most he had was, I think, $1,000. And in November of 09, the balance was $90,000. And then a check of this amount hits his account. That's very powerful circumstantial evidence when you look at everything that my sisters have also made reference to in the facts. That is strong circumstantial evidence perhaps, but of what is the question? The government undertook a burden to show that he knew this check was altered. They made a big deal about these withdrawals showing that he knew he wasn't entitled to the funds, but that's not the same as showing he knew the check was altered. I mean, he was able to offer an innocent explanation that involved him knowing he wasn't entitled to the funds, but didn't amount to bank fraud. And there are plenty of criminal explanations for his conduct that aren't bank fraud. They undertook more than money laundering. They need to show more than that he knew the funds were criminally derived, that he knew specifically the check was altered. And they just don't have any evidence making that more likely than that he thought he was committing some other crime. Let's go on to the exclusion of the emails, please, because I saw on pages 44 and 48 of the appendix of the district court ruled tentatively that she would not admit those emails, but that she wanted to hear his, you know, his testimony first. And after he testified, here's my question. Did he raise this issue again? And if he did, where in the record did the court conclusively and definitively exclude the evidence? Your Honor, it doesn't appear to me that he raised them again during Mr. Ajawi's testimony, but the government didn't raise the issue of waiver in its response brief, and therefore, if there were a waiver, the government waived waiver. And let me talk about the importance of these emails, because... Yeah, I wish you would, because I have to say, I thought that the district court's decision that they simply were not particularly relevant was a powerful ruling. I don't see anything inconsistent about wanting to run a business for MRI machines or any other business and wanting to fund that business with illegal funds. It seems to me there's just no inconsistency at all. So his evidence, this additional evidence that it was a business he was trying to run just doesn't strike me as terribly pertinent. Mr. Ajawi's only defense at trial was that he believed this check to be a legitimate investment in his business, and an essential fact of that was whether he had such a business. The government recognized this. That's why they told the jury repeatedly, first in closing argument and then in rebuttal, that he had no such business, and therefore, he had no reason to believe that this check was a legitimate investment in that business. But he presented evidence that he did have the business. The jury could weigh that. I just don't see how, when we have evidence in the record that the real payee of the check was this Pollack Paper Company, that the check becomes altered by somebody to Mr. Ajawi's personal business to this account that this entity, whatever it may be, runs. I don't see that evidence that maybe he is interested in creating some kind of business overseas tells you much about the actual issues in the case. Well this was certainly important to his defense. The government recognized its importance, and this was the strongest evidence that he could use to show that he had a business. The government was quick to point out in his cross-examination that there were no time stamps on the documents that he showed, the PowerPoint that he showed to the jury. Unlike the PowerPoint, these emails offered a snapshot into the past, showing that months before this thing he supposedly intended to steal even came into existence, he was already reaching out to MRI suppliers, inquiring about devices he might use in his intended imaging, and they showed that the day after the funds were released to him, he reached out again to the same MRI supplier. But you see, I just don't see anything about that that tells me why it was a legitimate acquisition of the funds versus an illegitimate. I don't see where something moves the ball down one line or the other, and you know, he gets this very large check. His own story is that the check is, you know, seven times bigger, or some large multiple bigger than this alleged Charles Brown was supposed to give him. It just, I mean, I just don't see how this evidence helps. So even if it was a mistake to exclude the evidence of the emails, why wouldn't it be harmless error? It's not harmless error because it's the most powerful evidence here. It's something with a time stamp that shows months beforehand he's reaching out to these businesses. But it doesn't tell you about the money that he's planning on using. It does tell you maybe he has some idea of this business in mind, but that's not the question in this case. The question focuses on this check. Relevance doesn't require the evidence go to the ultimate question, but this is an essential fact that leads up to the ultimate question, and that's why it's so important. And another part of it is... Yeah, but here's the thing. Relevance is very often a low bar. But either way, we do not have an abuse of discretion here with this judge. And that's what you would have to show us. I think the district court did abuse its discretion. As I've said before, the government recognized just how important this was too, and that's why they told the jury time and time again that he didn't have a business, therefore he couldn't have believed what he's telling you right now. But these emails were the strongest evidence that he did believe what he was telling them. It just seems to me like a side issue. Maybe the government, I mean, I recognize what the government argued, but it just strikes me as a side issue. That the real critical point is how did this Pollack paper check wind up with an altered payee? How did it wind up in his account? As I look at count one of the indictment, I'll grant you that counts two through the rest of it focus on the cashing, but count one goes into some detail about the scheme as a whole and the fact that it involves altering the check. As you say, it says a JIA knows the check had been altered, deposited and caused it to be deposited into the bank account at Chase, etc. So all of that detail is in count one. Your Honor, if I may, I think the key language in count one would be, and I'm quoting on the screen, they're describing as the execution to the jury his withdrawal of the funds. Well, the whole thing is part of count one though. It's the creation of the scheme. The scheme has to start with the deposit of the check, doesn't it? The way that they've defined the scheme to the jury, the execution is the withdrawal and there's an important distinction there because the knowledge requirement if they're charging the deposit would be on November 27th of 2009, but by charging his first withdrawal on December 9th, they've shifted back the knowledge requirement almost two weeks. And so I don't think count one should be treated any differently than counts two, three, five or six, which are the other bank fraud charges. Now, would you disagree with the fact that each time he cashes a check, Chase suffers an additional loss? It seems to me, look at what happened. He drains about half of the money out and then it all comes to light. They freeze the rest of it. They pay themselves back. So it's pretty clear that the cashing of the check is a significant moment for them, I'll just say. They do experience an additional actual loss, as they do with each debit card transaction, for each purchase of gum that he makes with his debit card transaction. But the bank fraud statute punishes risk of loss. It does this to make it quite clean and simple so that the deposit of an altered check could give rise to only one possible conviction for the deposit and not the potentially hundreds. Right. This goes back to Judge Rovner's point. Why wouldn't one just say that the extra counts are multiplicitous? There's really only one risk of loss. The government argues the full 344. That much needs to be corrected. We think at the minimum that's what should happen. But we also think that they didn't charge specifically the deposit and they need to prove the charges they put before the jury. Hypothetical charges don't give rise to real convictions. And that's why we think it should be resolved under Anderson with all of the bank fraud convictions being thrown out. But at the minimum, the court should vacate four of the convictions and remand for resentencing and the refunding of the special assessment fees. Okay. If you want to save a little rebuttal time, you may do so. Thank you, Your Honor. Thank you. He's best. May it please the Court, Yasmeen Best on behalf of the United States. Each of the defendant's convictions in this case should stand. It should not be remanded for resentencing. Okay. Well, you have not really distinguished United States versus Anderson. That case says once, or it certainly seems to, that once the defendant controls the money in a bank fraud, the scheme is complete. And in this case, that would have been at the time of the deposit clearing. I mean, how did the withdrawal subject the bank to any new risks? I would think the whole amount was at risk as soon as the check cleared. Your Honor, what happened in this case is that the defendant subjected Chase to more risk each time because he was able to divert from his business account to his personal to having cash in hand with each check. The full risk was there at the moment it's in the account. Yeah. The minute it's, you know, there, the bank is exposed to $344,000 loss, and the subsequent withdrawals didn't expose the bank to any greater loss. And I'm now told that the government charged him with the full $344,000, not just the $170,000 he managed to withdraw. So what that means is there's only one count of bank fraud and not five. Your Honor, I disagree. What's alleged in the indictment Everyone disagrees with me. What's alleged in the indictment is that there was a check for $344,000, but in paragraph six of count one, it does state that the defendant caused a loss of $171,000. And that's because Chase was able to recover the balance that was left in his bank, in the GR-ICON bank account once they discovered the fraud. But we're confusing two critical concepts, one being risk of loss, and the minute the $344,000 hits that account, the risk of losing the full $344,000 exists. Nobody knew at that So we're confusing risk of loss with actual loss. I don't think anybody has a problem with the notion that J.P. Morgan Chase actually suffered a loss of the $171,160. Fine. But Anderson says it's the full risk of loss that we are worried about here. And I think if you really insist on just the cashing of the checks, you're asking for a big change in doctrine. You know, I disagree. I don't, I think what Anderson says is that there is a, each time the victim is exposed to additional loss, that can constitute an execution. And it is a fact-specific analysis. And here, while J.P. Morgan You're talking about actual loss, though. The full, there is no additional risk of loss that they have. He could have gone in with the proper ID and had them wire the $344,000 to a bank account in London. And that could have been done, one step, done, and assuming they thought he was the legitimate holder of the account, it would have been gone. Yeah. Can you explain how did the withdrawal subject the bank to any new risks? Each time. The whole amount was at risk, the moment that check cleared. It cleared, the whole amount is at risk. So I can't get your argument at all. I think there are two, I think it's important to keep in mind that this is a GR icon business account, and that the defendant personally wrote these checks to himself from each, from the business account to himself, and then cashed them personally. For the defendant to have gone in and have drained the account, perhaps in one fell swoop, would have required him to take additional actions to prove that he was entitled to this money. He would have had to present himself to the bank, he would have had to show how he controlled the bank account, and at that point, as there was evidence from JPMorgan Chase's witnesses at trial, that would have subjected the defendant and his actions to additional scrutiny. That's not what the defendant did here. The defendant wrote a number, a series of checks on the GR icon bank account to himself, and then cashed those in person at various banks across the city. But they were big checks. Count 1 is $9,600, count 2 is over the $10,000 mark, so you're already in a much more regulated environment. Count 2 is $16,500. Count 3, $17,000, also over the $10,000 mark, highly regulated. Then the wire transfers, $53,000. I'm not sure I agree with you that his pattern of withdrawals was one designed to obscure the problem. I think, Your Honor, the way it obscures the problem is that there's this differentiation between GR icon, the corporate entity, and the defendant. The defendant presents identification when he goes to cash these checks to show that he is Abedemi Ajayi, but that takes away from the idea, or takes away from what he would have had to do if he were going to drain this account as the controller of GR icon, and the additional scrutiny that would have been heaped upon him by JPMorgan Chase if he had done so at the time. What if it had been six $53,000 wire transfers, as one of the counts was? I mean, that would have pretty much drained the account. Seven would have drained the account. And all in the line that you're talking about, a wire transfer from GR icon to the bank account of this different company, Company C in Hollywood, Florida. As the JPMorgan Chase witnesses testified, conducting such wire transfers actually did submit the defendant to additional scrutiny. He had to sit down and actually meet with an individual, discuss the transfer, ensure that the recipient of the transfer actually existed. So if he had done so, we would be dealing with an entirely different set of facts for each one of those transactions. Well, not account four. I've described account four. Correct. And that's a money laundering count rather than a bank fraud count. The $53,000 was the proceeds from a criminally derived proceeds. Actually, that's not what you say. You say it violates Section 513A and bank fraud in violation of Section 1344. So just to be precise. I'd like to go on and play the devil. What was the government's best evidence that he knew the check was altered when he deposited? I mean, put aside the unusual, to say the least, story, although you read about a lot of unusual things, like a man who comes in and leaves a $100,000 tip for a waitress. But at that moment, was he not just as likely to have been the victim of a scam as the perpetrator of one? You know, I read about that kind of scam every week. A person sells a used car for $6,000. The buyer pays with a $10,000 cashier check and says, I want that extra $4,000 back. By the time the seller and the bank realize that the cashier's check was fake, the buyer is long gone. Has the car seller committed bank fraud by depositing that check, believing it to be real? No, Your Honor, and I think that's distinct from the evidence in this case. Okay, so help me. The defendant's behavior, once he received the check, is powerful evidence that he knew that he was engaged in a fraud scheme here. So the government isn't arguing that he has any idea who altered the check? Because I take it you just don't have evidence about that. No. Magically, in the sky, this check changes from one to Pollock paper to GR icon. That's correct, Your Honor. We did not have any direct evidence at trial that the defendant knew who altered it. What we had was circumstantial evidence regarding the entire scheme. Was it your theory that it was either him or some agent that he controlled? I mean, you must have had some theory. Absolutely, Your Honor, and that it was the defendant. The defendant is the only person who profited from this scheme, that once this altered check hits his bank account, the defendant is the person who receives all the proceeds. And so it was the government's theory that either the defendant or someone working at his behest altered this check, and he received it. And then the evidence of his knowledge is the way he conducts himself in the immediate aftermath of receiving this check, and then once it's credited to his account. On the day that he receives the check, he drives directly to a bank in downtown Chicago, where, by his own testimony, he didn't even take time to park his car before depositing it at an ATM. He deposits this $344,000 check via ATM. He waits for that check to clear. And with evidence that he lived in Calumet City, drove all the way to downtown to deposit that check, passing dozens of branches on his way. Once the check clears, it clears either at the close of business on December 7th or early on December 8th. And at that point, the defendant engages in numerous transactions, multiple transactions per day, to start systematically draining the account. So up until that point, the evidence was that the defendant had very little money in the bank account over the years that it existed. And, in fact, had steadily been losing value in that account, and it had been decreasing to the point that the opening balance in the month of November 2009 was approximately $90. This check is then deposited into his account on November 27th, and when it is credited in December, he then drains the account, traveling from bank to bank multiple times per day to conduct these transactions. So if he had done it $1,000 at a time, 355 times, would this have been a 355-count indictment? Realistically speaking, Your Honor, no, it would not have been. But it could have been, on your theory. I don't see any reason why not. I think part of what was alleged in the indictment was that the defendant deposited this bank account, deposited this check into his bank account to create this artificially large balance so that he could withdraw the money. If the defendant had chosen to do so $1,000 at a time, first, the scheme may have been discovered earlier. It might not have. It's hard to say. And so knowing what executions actually would have occurred by the time that the fraud was discovered, it's hard to speculate about that. In this instance, the defendant was able to withdraw this money essentially over four business days. No, I understand that. But what worries me about the government's theory is, as you can obviously imagine, the possibility of prosecutorial manipulation of the number of counts would have been a 355-count indictment. That would have had tremendous consequences both to the sentence, to other aspects of the case, and this idea that you don't focus on the risk of loss and you don't focus on the single check as a whole. It's not like you did this with a number of different checks. It's just this one check, I think, leads you down a very troublesome path. I think, Your Honor, the difference here is that, again, how the defendant was executing this scheme and what the purpose of it was. I mean, we have the money laundering count, which is his wiring money to an offshore account, but we also have the defendant personally profiting by writing these checks from the business account to him personally. It's hard to speculate that in another instance the defendant would behave in the same way in terms of enriching himself personally. Why is that so hard to imagine? I mean, I find it stunning that it's not pretty obvious that people would try to enrich themselves personally through a corporation that they control. It happens every day. I agree, Your Honor. I think I'm talking more about in the manner that you just suggested in terms of much smaller checks and whittling away and doing that day by day. Oh, I'm certain if you take a look at some of the cases, you're going to see just that. Some people think it's harder to detect, right? Exactly, exactly. I think, and I take your concern, that the government could overcharge a defendant with 355 different counts if the defendant did this one by one. I don't think in terms of the way that the scheme was alleged here and the purpose of this defendant's actions, whether that's something that would be charged, I can't speculate as to what would happen under another scenario. Realistically, I think for all sorts of reasons, charging a 355-count indictment to get at this sort of fraud would be unwieldy and undesirable, so I'm not concerned that that's a realistic sort of possibility on this set of facts. But that's just the trust us, we won't abuse argument. And I hope the U.S. Attorney's Office never abuses anything, but the fact is we have rules of law to place constraints on indictments. I understand, Your Honor. I think here, again, going back to Anderson and to the way that knowing what the, and taking your distinction between the risk of loss and the actual loss, the execution is going to be fact-specific. What can be charged as executions is going to be fact-specific. So do you think you charged execution as the deposit of the check, too, or did you accidentally limit yourself to execution being only the cashings? I don't think there was any sort of accidental limiting it to one versus the other. I think it's the question as to what the strongest evidence was at the time that this case was charged. Realistically, what we have alleged in Count 1 is that the defendant knew that the check was altered at the time he deposited it. But in terms of the mechanics of what happened on the day of the deposit versus then how the defendant actually effectuated the scheme down the line, that's the reason why it was charged in the way it was. So I'm still, you know, I still don't see how you get around Anderson. And, you know, what specific language helps you in Anderson? Because it really says it's complete when he places the bank at risk, not necessarily when the loss occurs, and the bank fraud statute, this is still from Anderson, is meant to punish each execution of the scheme to defraud and not each act in furtherance of the scheme to defraud. And to me, him going to the bank, depositing those, those are acts in furtherance of the scheme. So I don't see where your comfort comes in Anderson. Now, where is the language that helps you? Because to me, this language hurts you. I think, Your Honor, looking at Anderson, the language that this, whether an act is an execution is fact-intensive, and the factors to consider include the ultimate goal of the scheme, the nature of the scheme, the benefits intended, and the interdependence of the acts, and then the numbers of parties involved. I think here, again, as I mentioned, this was a check that was deposited into a business account, and then each one of these checks is going to the defendant personally. It's allowing him to profit. See, but I don't see why that's so unusual or why that's really a distinction. I don't see why. I just don't think the facts help you either. It's the law and the facts that I think hurt you. I don't think that, I don't think it's necessarily unusual, but I do think that the facts here, that this is a defendant personally profiting from a check that was made out to this business account and allowing him to shield his involvement initially, to withdraw that money and profit personally, is the distinction here that makes these executions of a scheme where the check was initially made out to pollock paper, altered to reflect a business company, a business entity, and then the defendant is personally profiting and writing these checks so that he can cash them himself so that he can profit from the altered check. That is a time-honored way to do it. We see it all the time. And that's how this defendant committed bank fraud. The fact that this is sort of a common way of executing a scheme does not mean that these are not actual executions of the scheme. These are not acts in furtherance because the defendant cannot profit from this until he withdraws that money. That money is sitting in a business account at J.P. Morgan Chase. He doesn't profit personally until he takes that money out and has it in hand. That seems to me that's in furtherance of him getting the money in his pocket. But I think it's different than the check being deposited into the G.R. Icon account, that we're dealing with a business entity, and then he is personally profiting from cashing those checks after they've been deposited into that initial account. So if it wasn't a business entity and it was just made to him, you would agree that that would be in furtherance. But the big distinction you're making is because it was into the business account. I don't know if I would necessarily agree, Your Honor, but I do think those facts here are important. I think the way that he conducted this scheme, both depositing the check, waiting for it to clear, and then going from bank to bank to withdraw the money, to evade detection, to do this over a period of time, was part of the scheme. These weren't just acts in furtherance of it. This is what happens to actually complete his actions here and to actually profit from the scheme. Seeing no further questions, the government respectfully requests that you uphold the defendant's convictions and affirm his sentence. Thank you. Thank you. All right, thank you. Anything further, Mr. Studer? Thank you. May it please the Court. The government just conceded that they didn't charge the deposit in count one. So Anderson says that all of these counts must be vacated. And if you look closely at the language of count one, you'll see that the amount charged is specifically $9,600, not the amount of the check. The check is in the indictment, but it's just alleged as background information. And so Anderson is right on point, and the government's attempts to distinguish it are futile. Why wouldn't there at least be, I mean, actually the case to me is very much about whether the problem is just that there are four multiplicitous counts, or whether the problem is that there's just nothing adequate charged. But why wouldn't you at least say that the amount that he withdrew the first time was both at risk and also an actual loss? Surely anything that's an actual loss is also at risk of loss. That would be enough to save count one. Your Honor, the bank was at its full risk of loss when the check was deposited. I understand that, but if count one charges that the risk was $9,600, that affects sentencing guidelines and the like, but it doesn't affect a conviction. The withdrawal doesn't actually create a risk of loss. But their theory, which I understand, is that there is a scheme. The moment in the scheme at which the bank fraud statute kicks in is when he deposits the check. That's when the risk of loss ripens for the victim bank. But he actually didn't mean to just deposit in the bank and let it sit there forever decorating the bank's books. He meant to kind of finish up and take the money out. So I think the government, in some practical sense, envisioned the scheme as having a completing moment. And the question is whether count one, which describes the entire scheme, is sufficient. May I, Your Honor? You still have a minute. That's true of the defendant in Anderson, too. That defendant was trying to get the money into her own hands, and she did. And to rule as the government asked you to would be to overrule Anderson, saying that because under the government's logic, then that defendant's transfer of the funds from one account to another would constitute another execution of the scheme, and therefore the statute of limitations wouldn't have lapsed like it had in Anderson. So they ask you to implicitly, maybe explicitly, to overrule Anderson. And I'd like to talk a little bit about insufficiency real quick. There was absolutely no evidence in the record that Mr. Ajawi couldn't have withdrawn the full amount of the funds after they were made available to him on December 8, 2009. Absolutely no evidence of that. And the government cites as some of its strong evidence that the defendant was the only person who benefited. But the reason that he's the only person we know is because they didn't adequately investigate their case. There's nothing that we know about Amelia Granados despite the government having an address for her and having the ability to send an agent to ask whether she knew Mr. Ajawi, Mr. Brown, and what she did with these funds. So that's not evidence that weighs against him. Okay. Well, thank you very much. We appreciate your service to Mr. Ajawi. We appreciate the work of the Bloom Legal Clinic at Northwestern, and we thank the government as well. We'll take the case under advisement.